**UNITED STATES of America, Plaintiff,**

v.

**Eulogio ALVAREZ, et al., Defendants.**

**No. CR 02–355 FMC.**

United States District Court, C.D. California.

Jan. 29, 2004.

Ronald O. Kaye, Kaye, McLane & Bednarski, LLP, Pasadena, CA, for Defendants.

## ORDER DISMISSING INDICTMENT

FLORENCE–COOPER, District Judge.

For the reasons recited in this Order, the Court hereby dismisses the Indictment returned against defendants Eulogio Alvarez–Morales, Isai Rodriguez, and Juan Carlos Arreola–Jiminez, as a sanction for the Government's refusal to comply with the Court's Discovery Order.[1]

### Procedural History

On December 11, 2002, defendants were charged in an indictment with conspiracy to distribute methamphetamine and possession of methamphetamine with intent to distribute. On February 24, 2003, defendant Alvarez–Morales filed a Motion for Discovery re Informants.[2] In that motion, defendant sought information concerning the identity of the informant(s) used by the Government in the sting operation which resulted in the defendants' arrest, as well as documents regarding all telephone calls between the informant(s) and the defendant. Defendant also sought information concerning whether there was in fact more than one informant involved in the case. The defense requested all impeachment information available to the Government regarding the informant(s), including information concerning any other cases in which he or they had testified.

The Government responded that it had produced all requested discovery, including evidence of any prior bad acts by the informant (hereinafter, the "CI"), and all consideration or promises of consideration given to him; they informed defendants that to the Government's knowledge, after conducting a centralized inquiry into the Department of Justice and Drug Enforcement Agency (DEA) data bases, the CI

had no prior experience testifying in any case. The Government also reported that no other informants had been working on this case.

The Government refused to provide the following items of information:

(1) names and numbers of other cases in which the CI had been involved;

(2) disclosure of the CI's non-DEA employment from 1986 to date;

(3) the CI's entire payment history from 1968 to date;

(4) copies of the CI's DEA documents, such as agreements, payment vouchers, etc.

The Government did inform defendants that the CI's file revealed no reports of unsatisfactory performance and no additional impeachment material of any kind. The DEA Agent in this case, John DiFelice, filed a Declaration with the Court stating that: "The DEA monitors and reviews its confidential informants, and there is a procedure in place to identify instances of misconduct by an informant."

In reply, the defense provided the Court with a copy of a Management Review conducted by the DEA Office of Inspections. The Report describes the conduct of a CI named Andrew Chambers, who worked for the DEA from 1984 to 2000. The report revealed that Chambers had routinely lied on the witness stand about his background and had concealed significant amounts of impeaching material, over a 16–year period while working and testifying for the DEA, and that those lies had not been revealed to the defense in response to discovery demands. The report found systemic problems within the program and conclud-

---

1. The introductory paragraph was added by the Court for purposes of publication and was not part of the original Findings of Fact Regarding Discovery entered on January 29, 2004.

2. Ultimately, all defendants joined in the discovery motion which is the subject of this Order.

ed there was no effective system in place to manage paid informants. By working in 31 different cities, Chambers kept his history out of the hands of most prosecutors. Agents who used Chambers in one city had no information about his conduct in other cities, no information about how much he had been paid (approximately $1.9 million), and no way to acquire the information. So a prosecutor's representation that no impeaching evidence existed was honest, but wrong.

On 3/20/03, the Court granted defendants' request for discovery concerning the names and numbers of other cases in which the CI had been involved and the history of payments to the CI by the DEA.

On 6/20/03, the Court granted the Government's Motion for reconsideration of the 3/20 discovery order. The Court reversed its earlier order, having determined that in order for the discovery sought to be admissible, it would have to be relevant to a defense of entrapment. The Court concluded that the defendant's showing in support of a potential entrapment defense was outweighed by the Government's evidence of possible danger to the CI if the requested information were disclosed.

Finally, on 9/24/03, the defense filed an ex parte application, in camera and under seal, for the issuance of a subpoena duces tecum to obtain certain telephone records. The Court granted the application, and on 10/14, granted the defense ex parte request to continue the trial to allow the defense time to conduct its further investigation. (Documents and exhibits supporting the continuance request were also filed in camera and under seal).

Thereafter, on 11/17/03, the defense filed its Motion for Reconsideration of the Court's 6/30 Order, and a motion for discovery concerning a newly discovered "sub-informant," (hereinafter "SI"). On 12/18/03, after consideration of the evidence presented in connection with and in opposition to that motion, and after hearing argument of counsel, the Court granted the defense motions, reinstating its original Order and requiring disclosure of information about cases worked and money paid to both the CI and the sub-informant working under him.

On 1/5/04, the Government filed its Notice of Non–Compliance with the Court's 12/18/03 Order. The Government having indicated in its Opposition to the defendants' 11/03 motion that it did not intend to call either the agent or the sub-agent as witnesses at trial, the Court concluded that the only sanction remaining was the sanction of dismissal. The case was dismissed on January 27, 2004.

## Findings of Fact

Defendants were arrested on December 2, 2002, after they agreed to meet with the CI for the purpose of selling him methamphetamine.

Telephone conversations between defendant Alvarez and the CI were tape-recorded on December 2, 2002.

The arrest of defendants, when they met with the CI, was recorded and video-taped.

The Government informed the defense that it had produced all recordings of conversations between the defendants and any informants, and that no records of any other telephone calls existed.

In fact, the CI conducted most of the transactions leading to the arrest of the defendants through a third party (the sub-informant).

The CI and SI were working together on at least two other cases in the Central District of California at or near the time of the arrest of defendants in this case.

The CI was paid $2,500 for his work on this case.

SI was usually paid $1,000 for each drug transaction he succeeded in arranging. He was only paid if he was successful.

Telephone records reveal the following communications among the CI, SI, and the defendants: (Calls to the various parties are interspersed throughout each day)

| Date: | Parties: | Number of calls |
| --- | --- | --- |
| 11/26/02 | SI to CS | 2 |
| | SI to Defs | 3 |
| 11/27 | SI to CS | 3 |
| | SI to Defs | 2 |
| 11/28 | SI to CS | 1 |
| | SI to Def | 1 |
| 11/29 | SI to CS | 4 |
| | SI to Def | 1 |
| | CS to SI | 4 |
| 11/30 | SI to CS | 6 |
| | SI to Defs | 6 |
| | CS to SI | 1 |
| 12/1 | SI to CS | 12 |
| | SI to Defs | 7 |
| | CS to SI | 4 |
| 12/2 | SI to CS | 15 |
| | SI to Defs | 9 |
| | CS to SI | 14 |
| | CS to Defs | 4 |

Throughout this same period, there were an equal or greater number of calls between SI and the CS and a man named Parra, who was arrested 12/5/02, attempting to sell narcotics to the CI. The arrest of Parra occurred at Tacos Mexico in Santa Ana, the same location where the defendants in this case were arrested.

The declarations and trial transcripts provided by the defense persuade the Court that it is SI's practice to contact people he knows from his school days and to ask them to get methamphetamine for his "boss" to purchase.

The telephone records support an inference that pressure was being brought to bear by SI, which could have been sufficient to support an entrapment defense.

The informant has been paid over $300,000 by the Government during his eight years of service as a CI.

At different times throughout the history of this case, the Government has informed the defense that the CI worked only for the DEA and for no other governmental agency; and that he had worked on no cases outside the State of California. The Government also informed the defense that only one CI was involved in the events leading to the Defendants' arrest. None of that information was correct.

A memo dated 3/18/03 reflects a meeting between the DEA Agent and the U.S. Attorney in which the activities of SI as a go-between in the transaction with the defendants are discussed. Despite defendants' repeated requests for information about other informants in the case, this memo was not provided to the defense until some time in November 2003, after the defense independent investigation had revealed the existence of SI.

### Conclusions

Either the Government did not know about the use and assistance of the sub-informant (which seems to the Court highly unlikely in view of his repeated use by the CI), or the Government deliberately lied to the defense in this case.

If the Government did not know about the existence and utilization of the sub-informant, then its ability to monitor, regulate, and control the actions of its CI's is seriously compromised. If the Government did know about the sub-informant, but deliberately withheld this information from the defense, that is an even greater evil.

■ The Government's obligation to produce discovery extends not just to information in its possession, but to discoverable information in the possession of all involved agencies.

Representations made by the Government in this case concerning the history and lack of impeaching material concern-

ing the CI simply cannot be relied on by the defense or this Court.

By using an intermediary to do the actual work assigned to the CI, the DEA attempts to insulate itself from inspection and examination and from any charges of improper conduct.

The record in this case, as it appeared at the beginning, was that a defense of entrapment was not feasible, since there were so few contacts between the CI and the defendants, and those few encounters were tape-recorded, showing that no pressure was applied by the CI.

There was then revealed another layer of governmental activity, not preserved in any record, not tape-recorded or otherwise officially acknowledged, that rendered the defense of entrapment more feasible.

■ A law enforcement agency must not be allowed to shield itself from accountability by hiring someone outside of law enforcement who is free to violate citizens' rights.

■ Defendants are entitled to discovery which will provide them with reliable information about the background, credibility, record, and prior activities of a CI used by the Government in a case where information provided in discovery is proven to be wrong, and a wholly unidentified additional CI has been utilized by the Government.

Defendants are entitled to discover the names and numbers of other cases on which the CI and the sub-agent, SI, have worked on behalf of the DEA or any other law-enforcement agency.

### Summary

■ The Government's representations regarding the use of confidential informants in this case have repeatedly proven to be unreliable. Accordingly, the Court has ordered the Government to produce materials relating to the use of confidential informants. The Court has determined that prohibiting the Government from calling the informants as witnesses would not be an effective sanction, because the Government has already indicated an intent not to call these witnesses. The Court, after considering available sanctions, concluded that the sanction of dismissal of the indictment was the only available remedy that would protect the defendants' constitutionally protected rights.

The Indictment as to all the moving defendants is, therefore, dismissed.